Harold R. Sodbít, J.
In 1966 the apportionment of the legislative governing body of the County of St. Lawrence was found to violate the ‘ ‘ one person-one vote ’ ’ constitutional principle set forth in Reynolds v. Sims (377 U. S. 533; Dona v. Board of Supervisors, St. Lawrence County, 48 Misc 2d 876). The Supreme Court, St. Lawrence County, directed the defendant Board of Supervisors to prepare ánd adopt a constitutional plan of apportionment. Thereafter, a weighted voting plan was adopted by the Board of Supervisors and approved by the voters of St. Lawrence County at the 1966 general election as “ Local Law No. 2 for the year 1966 ”. On January 25,1967, by stipulation of the parties to the Dona v. Board of Supervisors, St. Lawrence County (supra) action, an order was entered by the Supreme Court directing implementation of Local Law. No. 2. Such was thereafter accomplished and the St. Lawrence County government has been operated under such law to the present time. No appeal of that order was perfected. The plaintiff in this action now seeks a declaration that the present county legislative governing body, created and existing pursuant to Local Law No. 2, is unconstitutional in that (1) it does not comply with the “ one person, one vote ” principle and (2) it is based upon an outdated Federal Census (1960), which, when compared with the current 1970 Census, evidences that there has been a change in population of the county and the various towns.
*329 The plaintiff and all of the answering defendants admit that there was a subsequent Federal Census in 1970 and a change in the population in the county and several of its towns. The named defendant, City of Ogdensburg, failed to appear in this action. As example of the changes in population from 1960 and 1970, the total population of St. Lawrence County in 1960 was 111,239 and in 1970 was 111,991, an increase of 0.7% (U. S. Bureau of Census, Final Report P C [1] — A34, New York, p. 34-31). In 1960 the Town of Clare had a population of 87 while in 1970 it had 97 persons for an 11.5% increase; the Town of Pierrepont in 1960 had a population of 1,523 but in 1970 a population of 1,726 representing a 13.3% increase; the Town of Macomb in 1960 had 881 persons but in 1970 only 813 for a 7.7% decrease in population. (U. S. Bureau of the Census, supra, p. 34r-31.) Furthermore, the county population basis for Local Law No. 2 of 1966 was “ adjusted ” by the parties to the Dona v. Board of Supervisors, St. Lawrence County (48 Misc 2d 876, supra) action from the official 1960 Census figures of 111,239 to 105,554 by excluding nonresident students attending educational institutions in St. Lawrence County.
In viewing the weighted voting plan provided by the provisions of Local Law No. 2, the plaintiffs’ expert provided a computerized analysis of the existing voting power distribution. Under the present plan, the Town of Clare with a 1960 population of 87 persons and one vote on the Board of Supervisors is in fact over represented by more than 200%. Other examples of over or under representation were presented by this expert.
Based upon all of the above, I find that plaintiff is entitled to summary judgment declaring that Local Law No. 2 of 1966 and any other local laws or charter provisions applying or implementing its provisions are unconstitutional as violating the principle of one person, one vote (Reynolds v. Sims, 377 U. S. 533, supra).
During the course of this action it became obvious to the parties and their counsel that the existing weighted voting plan would probably be declared unconstitutional for many of the reasons I have previously discussed. In: the expectation of this result and to avoid unnecessary delay in providing a constitutional plan of representation for the citizens and County of St. Lawrence, I met with the parties or their attorneys and the present- Board of Supervisors on a number of occasions and requested that they or any other interested citizen submit any proposals they may have for a constitutional county-level plan of representation in St. Lawrence County.
*330 The Board of Supervisors were aware that they, as the representatives of the citizens of St. Lawrence County had the primary right and duty to adopt any apportionment plan that would satisfy the one-person, one-vote principle. Numerous meetings of the board and its reapportionment committee were held and numerous proposals advanced. Private citizens and public spirited groups, such as the League of Women Voters of Canton and Potsdam, submitted their considered thoughts to the Board of Supervisors and to the court on this important issue.
On March 8, 1973, the Board of Supervisors passed Resolution No. 34 — 73, incorporated herein as court’s Exhibit No. 1, which provided in pertinent part: “Now Therefore Be It Resolved, that legislative districts plans designated as Numbers 11 B, 15 B and 22, which generally define and delineate the areas in the County of St. Lawrence to be included in the several legislative districts as part of the establishment of a county legislature, be .submitted to the Hon. Harold Soden, Justice of the Supreme Court, with the recommendation that one of such plans be approved, subject to such modification as the Court may direct.”
The court recognizes and takes judicial notice that St. Lawrence County is the largest county in area in the State of New York. There are 32 townships and the City of Ogdensburg in the county. Four of the 32 towns (Massena, Potsdam, Canton and G-ouverneur) and the City of Ogdensburg now have over 50% of the total county population. The southeastern portion of the county is especially sparsely inhabited. The county is essentially rural in nature with some of the finest farming lands in the State.
I held in Davis v. Board of Supervisors, County of Clinton (51 Misc 2d 347, 348-349): “ The courts have recognized the inequity of the voting power that has existed between urban and rural areas, both nationally and State-wide, and they have held that such imbalance violated the Federal and State Constitutions. To implement these decisions, the basic governing power has to be redefined by drawing new lines (redistricting) in order to equate or balance the voting power of the urban areas vis-a-vis the rural areas * * * The Federal and State cases on the subject do not authorize or transfer the sole and exclusive voting power of any governmental unit into the hands of the densely populated areas * * * It is the imbalance' in voting power between the two areas that -must be corrected *331 8 * * A vote without ability to effect a final result is an exercise in futility.”
Those principles were applied in the redistricting I ordered in Clinton County and were approved by the Appellate Division, Third Department on appeal, though it remanded for recomputation and redrawing of the districts to exclude State prison inmates (Davis v. Board of Supervisors, County of Clinton, 28 A D 2d 583).
I also applied such principles in the 1969 redistricting of Franklin County in Duquette v. Board of Supervisors, County of Franklin, and they were approved again by the Appellate Division, Third Department (32 A D 2d 706).
After careful review of all the evidence and exhibits before me, I am convinced that only by districting St. Lawrence County can a constitutional plan for county-level representation be achieved. The weighted voting and multi-member district plans advocated by many private citizens to the court could conceivably disenfranchise the rural population of St. Lawrence County. The present Board of Supervisors obviously recognized this also for none of the three plans submitted by the board advocates such methods of representation.
Prior to considering and passing upon the relative merits of the three plans submitted by the Board of Supervisors it would be pertinent to discuss some of the other constitutional requirements that any plan must satisfy.
The one person-one vote principle enunciated in the leading ¡ case of Reynolds v. Sims (377 U. S. 533), is applicable to local j legislative governing bodies (Abate v. Mundt, 25 N Y 2d 309, affd. 403 U. S. 182). The basic test of any such apportionment plan is if the plan adequately apportions representatives on a population basis, but “ mathematical exactness or precision is hardly a workable constitutional requirement ”. (Reynolds v. Sims, p. 577.) The United States Supreme Court and the New York Court of Appeals decisions have indicated that reasonable and justifiable deviations from strict population equality are permissible when intrastate legislative bodies are concerned (Mahan v. Howell, 410 U. S. 315; Abate v. Mundt, supra). Such plans “ should take into consideration the preservation of present town lines so that less confusion would ensue, and the-integrity of the towns would be preserved ’ \ (Davis v. Board of Supervisors, County of Clinton, 51 Misc 2d 347, 350, supra; see Mahan v. Howell, supra.) “ Indiscriminate districting, without any regard for political subdivision or natural or historical *332 boundary lines, may be little more than an open invitation to partisan gerrymandering (Reynolds v. Sims, 377 U. S. 533, 578-579, supra.)
In applying these and other constitutional principles to the plans submitted by the Board of Supervisors denominated, as No. 11 B, 15 B and 22, it is noted that all of said plans utilized the official Federal Census population figures for 1970 for St. Lawrence County and its accompanying maps, which breakdown such population to specific towns and districts. Official copies of such statistics and maps have been provided to the court, and they are accepted and incorporated herein as court’s Exhibit 2.
Both plans numbered 11 B and 15 B leave much to be desired in meeting the underlying concept of one person-one vote. Plan 11B provides for 11 districts. One district numbered 10 encompasses 9 towns and district numbered 11 encompasses 8 towns. The City of Ogdensburg is split and the city’s population is divided between adjacent towns. Town lines are completely disregarded in a number of instances.
Plan 15 B provides for 15 districts. One district numbered 2 encompasses seven towns. It also cuts existing town lines in two instances. In the Town of Massena the proposed districts 4 and 5 split the Village of Massena into a horseshoe-shape affair for no obvious reason except perhaps political gerrymandering. The Village of Canton is also split as is the Village of Potsdam and portions placed with other, in many instances, nonsimilár adjacent areas.
In my opinion, effective representation would be impossible if a single representative were required to consult with and advocate the interest and desires of such a large group of towns and their inhabitants as proposed by plans 11B or 15B.
For the above specifically enumerated reasons and others, I refuse to accept either plan 11B or 15B as being constitutional plans within the one person-one vote principle of Reynolds v. Sims (377 U. S. 533, supra).
Plan 22, as submitted by the Board of Supervisors, also has a few serious deficiencies although it also has much merit. Its largest grouping of towns is in districts 7 and 9 with five towns each. It does divide a few town lines in attempting to equalize population as required by Reynolds v. Sims (supra).
However, it ignores the historical and actual relationship between the Town of Clifton and the Town of Fine. These two townships jointly own the Clifton-Fine Hospital, the Clifton-Fine Central School and both operate a jointly used sanitary landfill. Many of the public interest service clubs, which their *333 citizens belong to, are consolidated (e.g., the Lions Club of Clifton-Fine). In the proposed plan 22, these two closely related towns are placed in different districts, namely 7 and 8. Furthermore, its proposed districts 11 and 12 divide the Town of Gouverneur in such a manner that a fusion of basically dissimilar election district areas results. For these and other reasons, I also refuse to accept plan 22 as proposed by the Board of Supervisors as being constitutional with the one person-one vote principle of Reynolds v. Sims (supra).
Pursuant to the authority of Matter of Orans (17 N Y 2d 107) and the Resolution No. 34-73 of the Board of Supervisors, St. Lawrence County, of March 8,1973, it is the duty of this court to apportion St. Lawrence County pursuant to the constitutional standards discussed herein.
Attached hereto and made a part of this decision is an apportionment plan identified herein as “ Plan A ” for 22 districts, which plan shall constitute the new legislative districts for the county level of government in St. Lawrence County until hereafter amended or modified according to constitutional standards. This plan is essentially similar to the Board of Supervisors’ Plan 22 but many of the defects previously pointed out have been minimized or avoided entirely. The Towns of Clifton and Fine have been combined into District 8. The largest number of towns in one district is 5 (Districts 7 and 9). The Town of Gouverneur is more realistically districted. Of course, population disparities are the primary evil to be avoided. In “ Plan A ”, District 19 is the smallest in population, having 4,716, while District 20 is the largest with 5,451. Mathematically, the 19th District is 13.483% lower than the highest District No. 20. Alternatively stated, District No. 20 is 15.585% higher than District No. 19. This ‘ ‘ imbroglio of mathematical manipulation ” (Mahan v. Howell, 410 U. S. 315, 319, n. 6, supra) does not resolve the constitutional issue. There is no way of securing a better result except by virtually ignoring all town lines for the sake of population equality. This is not required, as previously discussed. A population disparity of 16% has been upheld as within the constitutional limits by the United States Supreme Court within the past month (Mahon v. Howell, supra). I find sufficient reasons exist as discussed hereinabove to preserve the existing town lines as much as is humanly possible.
The court expresses its thanks to the parties and their attorneys for their co-operation and assistance to the court in the performance of this difficult task. Special thanks and the appre *334 ciation of the court are owed to the Clerk of the Board of Supervisors, Mr. Charles Fox, for his invaluable assistance to the court and his devotion to the best interests of the citizens of St. Lawrence County. Without his co-operation with the court with the consent of the Board of Supervisors, the court’s task would have been much more difficult.
It is, therefore, the decision of this court that St. Lawrence County be divided into 22 separate legislative district areas as delineated in “ Plan A ” attached hereto. The original of this decision and all court exhibits herein are to be kept on file in the office of the Clerk of the County of St. Lawrence. The Board of Elections of St. Lawrence County shall take the necessary steps for the election of one “ County Legislator ” to represent each of the 22 districts created by “ Plan A ” at the fall election of 1973, unless otherwise Ordered by this court. This court will keep exclusive jurisdiction of this matter until its final determination and until a constitutional plan of representaton for St. Lawrence County is finally in existence and operating. At and upon such time, the “ County Board of Legislators of St. Lawrence County” shall assume all duties and powers of the existing “ Board of Supervisors of St. Lawrence County”.
court's plan “a”
PLAN FOR 22 LEGISLATIVE DISTRICTS
1970 Census Population
District 1
Town of Lisbon 3271
Town of Madrid 1635
4906
District 2
Town of Waddington 2054
[fown of Louisville 2727
4781
District 3
Town of Stockholm 3597
Town of Parishville 1631
5228
*335 1970 Census Population
District 4
Town of Brasher 2410
Town of Lawrence 1632
Town of HopMnton 884
4926
District 5
Town of Canton — Election District Ho. 1 2598
Ho. 3 956
Ho. 6 1773
5327
District 6
Town of Canton — Election District Ho. 2 465
Ho. 4 552
Ho. 5 561
Ho. 7 832
Ho. 8 1540
Ho. 9 1071
5021
District 7
Town of Piereefield 422
Town of Colton 1249
Town of Bussell 1586
Town of Clare 97
Town of Pierrepont 1726
5080
District 8
Town of Fine 2371
Town of Clifton 1207
Town of Edwards 1219
4797
District 9
Town of Hammond 1015
Town of Bossie 643
Town of Macomb .813
*336 1976. Census Population"
Town of Morristown 1823
Town of Depeyster 769
5663
District 10
Town of Oswegatchie 3162
Town of DeKalb 2662
5224
District 11
Town of Gouverneur — Election District
No. 1 733
No. 2 892
No. 4 1659
No. 5 967
No. 7 1122
4773
District 12
Town of Gouverneur — Election District , . No. 3 . 923
No. 6 1614
Town of Fowler 1576
Town of Pitcairn 667
Town of Hermon 1687
5267
District 13
Town of Potsdam — Election District No. 1 777
No. 2 922
No. 5 921
No. 11 2827

éU7.

District 14
Town of Potsdam — Election District No. 6 2662
No.- 7 - 1196
No. Id 1145
5003
*337 1970 Census Population
District 15
Town of Potsdam— Election District No. 3 895
No. 4 851
No. 8 787
No. 9 1368
No. 12 835
Remainder of Election District No. 13 not included in District 16 603
5339
District 16
Town of Norfolk 4701
That part of Election District 13, Town of Potsdam, Village of Nor-wood, beginning at the point where the railroad crosses the Raquette River, thence in an easterly direction to the boundary of the corporation line which is also the Town line of Potsdam and Norfolk; thence in a northerly and westerly direction along the town and village line to the Raquette River; thence in a westerly and southerly direction along said river to the point of beginning:
1970 Census Enumeration Districts
Population
101 191
103 79
104 23
105 32
106 109
107 18
108 25
109 116
593
Total District No. 16 • 5294
*338 1970 Census Population
District 17
City of Ogdensburg
Ward 2 — Election Districts No. 1, 2, 3, 4 (Entire Ward) 3664
Ward 1 — Election District No. 1 523
No. 4 839
5026
District 18
City of Ogdensburg
Ward 1 — Election District No. 2 423
No. 3 881
Ward 3 — Election District No. 2 531
No. 3 591
No. 4 967
Ward 4 — Election District No. 2 1419
■ 4812
District 19
City of Ogdensburg
Ward' 3 — Election District No. 1 576
Ward 4 — Election District No. 1 977
No. 3 1383
No. 4 1780
4716
District 20
Town of Massena — Election District
No. 5 1129
No. 10 1246
No. 11 978
No. 12 860
No. 13 1238
5451
District 21
Town of Massena — Election District No. 1 930
No. 2 1169
*339 1970 Census Population
No. 7 1382
No. 8 1311
No. 9 411
5203
District 22
Town of Massena — Election District No. 3 1163
No. 4 1169
No. 6 896
No. 14 465
No. 15 1674
5367
Total County Population 111,991